# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL FENCEL, B-86752, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| JOHN R. BALDWIN,<br>JACQUELINE LASHBROOK,<br>SPILLER,<br>A. MASTERSON,<br>CROSS,<br>MS. HILL,<br>KENT E. BROOKMEN,<br>JOSHUA KRUGER,<br>JOHN DOE 1,<br>JOHN DOE 2,<br>JOHN DOE 3,<br>and JOHN DOE 4,<br>Defendants. | ) ) ) ) ) ) ) Case No. 19-cv-0316-PGR ) ) ) ) ) ) ) ) |

## MEMORANDUM AND ORDER

**PHILIP G. REINHARD, United States District Court Judge:[1]**

This matter is before the court for preliminary review of the complaint filed by plaintiff Michael Fencel, an inmate in the Illinois Department of Corrections who currently resides at Stateville Correctional Center. ([6]). Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 for constitutional deprivations resulting from the failure to protect him from a dangerous cellmate at Menard Correctional Center ("Menard"). He seeks monetary damages. (*Id*. at 15).

This case is now before the court for preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The complaint survives screening as describe herein.

## Complaint

---

[1] Sitting by designation pursuant to 28 U.S.C. § 294(c) and Administrative Order No. 248 of the United States District Court for the Southern District of Illinois.

Plaintiff alleges that his trouble at Menard began on August 4, 2017, when he was placed in a cell with inmate Joshua W. Kruger. ([6], p. 11). Kruger immediately indicated that plaintiff would need to abide by his rules to co-habit successfully. A few weeks after they became cellmates, Kruger asked plaintiff to help him run a "store" business with purchases made from the commissary. Plaintiff agreed, in exchange for $20. Kruger sought the help because inmates are generally limited to shopping at the commissary twice a month, with a spending limit of $100 per shopping trip. Plaintiff began receiving money to his prison account from Kruger's family, and he made shopping trips to the commissary. After a trip on October 17, 2017, Kruger told plaintiff that plaintiff owed him an amount that would be disclosed at a later date. (*Id.*).

From mid-October into early November, Kruger began asking plaintiff personal and sexual questions. (*Id*. at 11). On November 4, 2017, plaintiff passed a letter to C/O defendant Cross during chow expressing discomfort with Kruger's conversations. Cross ignored plaintiff's written request for a cell change, but Kruger somehow got wind of the incident; that night, he beat plaintiff's chest and ribs and told him he could not move cells. In the days that followed, Kruger recommenced uncomfortable conversations, but plaintiff was afraid to alert staff to the problem. (*Id.*).

On November 12, 2017, plaintiff alleges that Kruger forced him to perform oral and anal sex. (*Id*. at 11). After the rape, Kruger threatened plaintiff and told him if he reported the incident he would be beaten or killed. (*Id*. at 12). On November 19, 2017, Kruger raped plaintiff a second time via forced oral and anal sex. Kruger forced anal sex a third time on November 24, 2017. Finally, on November 27, 2017, Plaintiff wrote a letter about his rape to defendant Lashbrook. (*Id.*).

John Doe 1 (a lieutenant) and John Doe 2 (a correctional officer) came to plaintiff's cell on November 28, 2017 to remove him and Kruger. (*Id*. at 12). Plaintiff was taken to the health care unit where John Does 3 and 4 (internal affairs officers) were waiting to interview him. As he tried to explain his recent experiences with Kruger, John Does 3 and 4 repeatedly asked him if he was just lying to try to get a cell change, and they indicated that if that was the case, they could help him. Plaintiff insisted that on multiple occasions Kruger grabbed him, shoved him to the back of the cell, pulled down his shorts and underwear, applied some sort of lubricant to a glove and raped him anally. At one point, John Doe 3 left the room and John Doe 4 became argumentative with plaintiff about the situation. Plaintiff asked to proceed with the medical rape test, and John Doe 4 asked him if he really wanted to go through with the embarrassing test. (*Id.*).

During the medical examination, Dr. Siddiqui, two nurses, and John Does 3 and 4 were present in the room. (*Id*. at 12). John Does 3 and 4 continued a course of mocking and harassing plaintiff that they began during the interview. After the test concluded, plaintiff was kept in the medical unit overnight. At some point, John Doe 4 and a nurse entered his room to give him pads because he apparently bled on the table during the exam and they wanted to monitor for continued bleeding. (*Id.* at 12-13).

The next day, A. Masterson interviewed plaintiff about the rapes he reported. (*Id.* at 13). She told him that if he was lying he would face time in segregation, but he insisted he was not lying. He described the rape to Masterson the same way he described it to John Does 3 and 4. He

also informed her that those two individuals mocked him during their interview the previous day. Masterson indicated that she did not John Does 3 and 4 and that she disagreed with their interview style. She concluded the interview by telling plaintiff that Kruger was going to take a lie detector test, and she urged plaintiff not to tell his mother about the ongoing issue. (*Id.*).

On November 30, 2017, plaintiff spoke with mental health counselor Hill who told him that he would have six months in a single man cell, followed by placement with a safe cellmate. (*Id.*). Hill confirmed that he should not tell his mother about the situation. (*Id.*).

Shortly after arriving in a single man cell in segregation, A. Masterson came to interview plaintiff a second time. (*Id.*). During the interview she told him that she received a letter from Kruger who claimed the sex was consensual. Plaintiff denied Kruger's claim. Masterson then informed plaintiff that Kruger had been misclassified as an individual guilty of sexual misconduct while at Pontiac Correctional Center, when in fact he should have been classified as an individual guilty of sexual assault for his conduct at Pontiac. In light of this information, Masterson told plaintiff she could get him placed in protective custody and transferred to Pontiac. (*Id.*).

Around December 7, 2017, plaintiff told his mother about the sexual assaults by Kruger. (*Id.*). On December 9, 2017, plaintiff decided to call the Prison Rape Elimination Act ("PREA") hotline to report the rape. On December 21, 2017, plaintiff was taken into protective custody. The next day, Masterson wrote him a disciplinary ticket for admitting to consensual sex with Kruger. Because of the ticket, plaintiff was taken to segregation. (*Id.*).

Plaintiff alleges that John Doe 3 and 4, Ms. Hill, and Masterson began trying to cover up the interactions with plaintiff to avoid any finding of deliberate indifference on their behalf for failing to protect him. (*Id.*). Plaintiff believes that Kruger received a lie detector test, but he did not. (*Id.* at 13-14). At a January 2, 2018, disciplinary committee meeting, the committee decided that the ticket was founded. (*Id.* at 14). Hill indicated at the meeting that plaintiff should be designated as seriously mentally ill and he should serve six months in segregation. Plaintiff subsequently served six months in segregation. (*Id.*).

Plaintiff concludes that prison officials were aware of Kruger being dangerous prior to the two being housed together. (*Id.*). Despite this knowledge, officials refused before and after the three rapes to provide plaintiff with any help or protection. Instead, they reframed the incidents as consensual to avoid liability. Plaintiff alleges that Baldwin, Lashbrook, Spiller, Masterson, Cross, Hill, Kruger, and John Does 1-4 all acted with deliberate indifference to his safety and well-being. (*Id.*).

Plaintiff appended grievances and disciplinary documents to his complaint. (*Id.* at 16-36). A December 9, 2017 grievance indicates that plaintiff asked one officer at chow, and then asked Cross to move him to another cell because his cellmate was scaring him with sexual questions. (*Id.* at 35-36). Plaintiff claims his requests fell on silent ears but Kruger somehow learned of his fear and raped him that night. Plaintiff alleges that he wrote to the Warden about the rape. The grievance alleges that the officers who did not respond to his requests for help were negligent, the grievance was deemed not an emergency. (*Id.*).

A December 22, 2017 Offender Disciplinary Report indicates that plaintiff admitted to having consensual sex at an interview, in violation of the prison sexual misconduct policy. (*Id.* at 16). The report was rewritten on January 3, 2018, to include Kruger's name. The rewritten report indicated that plaintiff told the committee that "after the encounter on the 26th, he felt wrong for his willingness to perform sexual acts with Kruger and reported the sexual acts as PREA/Sexual assault to the Warden via letter. Kruger volunteered to a CVSA and was found truthful in his statements that he did not sexually assault [plaintiff] and that they planned to have sex that evening." (*Id.*). The report indicates that because Kruger's truthful statements and plaintiff's admission corroborate each other the plaintiff properly received a disciplinary ticket. (*Id.*).

Plaintiff filed a grievance on January 3, 2018, wherein he stated that he was 90% not guilty and 10% guilty. (*Id.* at 18-19). He went on to explain that he felt like a guilty "dumbass" for agreeing to open a store with Kruger and ultimately having sex with him. Plaintiff indicated that he decided to open the store to alleviate pressure on his family members who were trying to provide him with money from outside of prison. In the grievance he requested that the ticket be dismissed and he be transferred to a new facility on protective custody status. (*Id.*). The grievance office denied the grievance because the disciplinary committee already dealt with the ticket (*Id.* at 20).

A second grievance lodged on January 3, 2018, was deemed an emergency because plaintiff made extensive comments about committing self-harm. (*Id.* at 21-22). In the emergency grievance, plaintiff indicated that he thought after two sexual encounters he was "square" or even with Kruger, and the third was a rape. He alleges that Lieutenant Spiller made comments at some time about the third incident being a rape, but he does not indicate when the comments were made or how he was privy to them. The grievance contains extensive discussion of plaintiff's mental anguish as a result of the sexual encounters. Plaintiff requests a single man cell, mental health attention, a transfer to another facility, access to his television, and protective custody. (*Id.*). The grievance office deemed the grievance moot because mental health was urgently attending to the issues at the direction of the warden, and the custody status and transfer issues could be dealt with at the end of plaintiff's segregation penalty (*Id.* at 23).

Appeals of the grievances were denied. (*Id.* at 25, 27). A February 13, 2018 memorandum from Warden Lashbrook indicated that the PREA investigation was deemed unfounded in light of the consensual sexual relationship. (*Id.* at 28). Mental health notes indicate plaintiff was screened and monitored prior to the disciplinary proceedings and segregation time. (*Id.* at 29-32). The adjustment committee notes reflect that the disciplinary panel found him guilty of sexual misconduct. (*Id.* at 33-34).

Based on the allegations in the complaint, the court finds it convenient to divide the *pro se* action into the following enumerated counts:

**Count 1:**     **Eighth Amendment failure to protect claim against Defendant Cross for the November 12, 2017 assault.**

**Count 2:**     **Eighth Amendment failure to protect claim against Defendant Cross for the November 19, 2017 assault.**

> **Count 3:** Eighth Amendment failure to protect claim against Defendant Cross for the November 26, 2017 assault.
>
> **Count 4:** Eighth Amendment failure to protect claim against Defendants Baldwin, Lashbrook, Spiller, Masterson, Hill, Kruger, and John Does 1-4.
>
> **Count 5:** Assault by Inmate Kruger.

The parties and the court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this court. **Any other claim that is mentioned in the complaint but not addressed in this order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

## Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (*quoting Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (other citations omitted)). In order to establish a claim for failure to protect against a prison official, a plaintiff needs to show: (1) he was incarcerated under conditions posing a substantial risk of serious harm and, (2) that prison officials acted with deliberate indifference to that risk. *Id.*

In order to establish the first element, a plaintiff must show not only that he experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). The second element, the subjective element, is more difficult for a plaintiff to demonstrate, and requires an inquiry into a defendant prison official's state of mind. *Farmer*, 511 U.S. at 847. A prison official may be held liable only if he knows an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." *Id.* Thus, in order for plaintiff to prevail on his failure to protect claims, he must establish that defendants had actual knowledge of an impending harm, easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from each defendant's failure to prevent it. *Santiago*, 599 F.3d at 758. In cases involving inmate-on-inmate violence, "a prisoner normally provides actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

### Count 1

Plaintiff alleges that he informed Cross that he feared for his safety by handing him a note while attending a meal at the chow hall. He alleges that Cross ignored the letter or took no action. Kruger caught wind of the letter and physically beat plaintiff. Cross cannot be held liable for this beating because plaintiff does not allege that the letter warned Cross that plaintiff feared a beating. However, plaintiff did allege in the letter that he feared sexual violence by Kruger. To the extent

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (an action fails to state acclaim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

that Cross was potentially aware of the risk of sexual violence, and he took no action, he may be liable for failing to protect plaintiff. Thus, this count shall proceed against Cross only.

### Counts 2 and 3

Although Cross may not have known a first assault occurred or that a second or third assault was imminent, those factual determinations are appropriate for summary judgment or for a jury, so counts 2 and 3 will proceed against Cross.

### Count 4

Finally, plaintiff alleges that all other named defendants failed to protect him from the assaults by knowingly placing him in a cell with a sexually dangerous inmate. Plaintiff claims that he learned that Menard had knowledge of Kruger's predatory behavior but failed to keep him separate from other inmates. Although this allegation may or may not be true, plaintiff has not explained how the specific named defendants took improper actions with this knowledge in hand before he was allegedly assaulted on multiple occasions. Because there is no specific tie between the purported knowledge of Kruger's danger and the actions by each individual defendant, this count will be dismissed without prejudice as insufficiently pled.

### Count 5

Plaintiff names his former cellmate Kruger as a defendant in this action, but he cannot do so because Kruger did not act in concert with state officials to violate plaintiff's rights. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005). "Private persons, jointly engaged with state officials in a challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). Plaintiff does not allege that Kruger intentionally entered into a joint enterprise with state officials to sexually abuse him, so Kruger is not an appropriate defendant in this Section 1983 litigation.

### **Motion for Recruitment of Counsel**

Plaintiff has filed a motion for recruitment of counsel ([3]), which is **DENIED**.[3] He appears to disclose efforts to contact attorneys via written correspondence by providing his recent mailing list, but he does not indicate the results of those efforts. Plaintiff does not indicate why he believes he needs the assistance of counsel in his motion. With respect to his ability to pursue this action *pro se*, plaintiff includes test scores and indicates he only has some high school education. Nonetheless, the court finds that plaintiff can proceed *pro se*, at least for now. Plaintiff's pleadings demonstrate an ability to construct coherent sentences and relay information to the court. Plaintiff appears competent to try this matter without representation at this time. Once discovery has commenced, if plaintiff has significant difficulty, he may refile his motion.

---

[3] In evaluating a motion for recruitment of counsel, the court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

**Disposition**

**IT IS ORDERED** that **Counts 1, 2, and 3** will proceed against **C/O Cross**, but they will be **DISMISSED** without prejudice for failure to state a claim against **all other defendants**.

**IT IS ORDERED** that **Count 4** against **John Baldwin, Jacqueline Lashbrook, Spiller, A. Masterson, Ms. Hill, Kent E. Brookmen, and Joshua Kruger and John Does 1-4**[4] shall be **DISMISSED** without prejudice for failure to state a claim.

**IT IS ORDERED** that **Count 5** against **Joshua Kruger** shall be **DISMISSED** with prejudice for failure to state a claim.

**IT IS ORDERED** that the clerk of court shall prepare for Defendant **CROSS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The clerk is **DIRECTED** to mail these forms, a copy of the complaint ([1]), and this memorandum and order to each defendant's place of employment as identified by plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the clerk within 30 days from the date the forms were sent, the clerk shall take appropriate steps to effect formal service on that defendant, and the court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS ORDERED** that, if a defendant can no longer can be found at the work address provided by plaintiff, the employer shall furnish the clerk with defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the clerk. Address information shall not be maintained in the court file or disclosed by the clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, defendants need only respond to the issues stated in this merits review order.**

**IT IS ORDERED** that if judgment is rendered against plaintiff, and the judgment includes the payment of costs under Section 1915, plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

**IT IS ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, plaintiff is **ADVISED** that he is under a continuing obligation to keep the clerk of court and each opposing party informed of any change in his address; the court will not

---

[4] This dismissal covers John Doe 1 (lieutenant) and John Doe 1 (lieutenant North Upper Cell House) – it is not clear to the court what the distinction is between these two, so it also cannot be said that a clear claim is stated against these unnamed individuals.

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS SO ORDERED.**

DATED: 7/30/2019

*Philip G. Reinhard*
**United States District Judge**

### Notice to Plaintiff

The court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an answer to your complaint. It will likely take at least **60 days** from the date of this order to receive the defendants' answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed answers, the court will enter a scheduling order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the court at this time, unless specifically directed to do so.**