**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MICHAEL FENCEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-316-SMY |
| | ) |
| RYAN CROSS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Michael Fencel, an inmate in the Illinois Department of Corrections, filed this civil rights action under 42 U.S.C. § 1983 against Defendant Ryan Cross for alleged violations of the Eighth Amendment.[1] Before the Court is Defendant's motion for summary judgment on the issue of failure to exhaust administrative remedies. (Doc. 35). Plaintiff filed a response opposing the motion. (Doc. 37). After reviewing the parties' briefs, the Court determined that there were no disputed issues of fact and an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was not necessary. For the following reasons, Defendant's motion for summary judgment is **GRANTED**.

### Background

At all times relevant to this lawsuit, Plaintiff was an inmate at the Menard Correctional Center ("Menard"). (Doc. 6, p. 11). On August 4, 2017, Plaintiff occupied a cell with Joshua Keuger. (*Id.*). Keuger told Plaintiff he would pay him to shop at the prison commissary for him and Plaintiff agreed. (*Id.*). Keuger's family members sent Plaintiff money that Plaintiff used to

---

[1] The Clerk of Court is **DIRECTED** to correct the docket sheet to reflect that the name of Defendant Cross is Ryan Cross.

buy items at the commissary for Keuger. (*Id.*). Because the prison limits the amount inmates may spend per month, Keuger's scheme allowed him to purchase additional items. (*Id.*).

Between October 17, 2017 and November 6, 2017, Keuger began asking Plaintiff personal and sexual questions. (Doc. 6, p. 11). On the evening of November 6, 2017, Plaintiff gave Defendant Ryan Cross, a correctional officer at Menard, a note stating that Keuger was asking him personal and sexual questions and requesting a cell change. (*Id.*, pp. 11, 24). Later that night, Keuger discovered that Plaintiff gave Cross the note and beat Plaintiff. (*Id.*, p. 11). On November 12, 2017, at 10:30 p.m., Keuger raped Plaintiff in their cell. (*Id.*).

On November 27, 2017, after Keuger raped Plaintiff three more times, Plaintiff sent a letter to Jacqueline Lashbrook, Menard's Warden. (*Id.*, p. 12). The letter stated that Plaintiff's cellmate had raped him and asked Lashbrook for help. (*Id.*, pp. 12, 24). Prison officers escorted Plaintiff to the healthcare unit the following day. (*Id.*, p. 12). Several officers interviewed Plaintiff while he was at the healthcare unit. (*Id.*). Plaintiff explained that Keuger had raped him. He stayed at the healthcare unit overnight. (*Id.*).

On December 9, 2017, Plaintiff reported his rape to the Prison Rape Elimination Act hotline. (*Id.*, p. 13). The prison investigated Plaintiff's claims and on December 22, 2017, determined that Plaintiff and Keuger had consensual sexual intercourse in violation of prison rules. (*Id.*, pp. 16-17).

Plaintiff filed an emergency grievance on December 9, 2017 asking to be placed on "one-man cell" status. (*Id.*, p. 35). The prison's Chief Administrative Officer determined that Plaintiff's grievance was not an emergency and informed him to "submit [the] grievance in the normal manner." (*Id.*).

On January 3, 2018, Plaintiff filed an emergency grievance challenging the prison investigation's conclusion that he and Keuger had consensual sex in violation of prison rules and asking, among other relief, that he be transferred to another facility and placed on one-man cell status. (Doc. 36-1, p. 38-39). The CAO agreed that the grievance was an emergency on January 5, 2018. (*Id.*, p. 38).

Plaintiff also filed a grievance on January 4, 2018, asking that his disciplinary ticket be dismissed and that he be protected from Kreuger. The grievance does not mention Defendant or his role, if any, in failing to prevent the rape by Kreuger. (*Id.*, pp. 15-16). A grievance officer reviewed both grievances on January 5, 2018 and recommended that the January 4, 2018 grievance be denied on the merits. (*Id.*, p. 14). The officer also recommended that the January 3, 2018 grievance be denied as moot because the issues raised were already under investigation by prison officials. (*Id.*, p. 37). The CAO concurred in both recommendations, and Plaintiff timely appealed. (*Id.*, pp. 13, 24).

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendant is] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a), which provides in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The purpose of the PLRA is to

"afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, consistent with *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008), "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. .

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, exhaustion must occur before the lawsuit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). *Id.* "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005).

As an inmate confined within the Illinois Department of Corrections ("IDOC"), Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code and IDOC's Grievance Procedures for Offenders to exhaust his claims properly. 20 ILL. ADMIN. CODE § 504.800, *et seq*. First, inmates are required to file a grievance with the counselor within 60 days of the discovery of an incident, occurrence, or problem). 20 Ill. Admin. Code § 504.810(a). The

grievance must contain factual details regarding each aspect of the prisoner's complaint, including what happened, when, where, and the name of the person who is the subject of the complaint, and, if the prisoner does not know the name, they must describe such person with as much detail as possible. 20 Ill. Admin. Code §504.810(c). If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer (second level review) who must render a written recommendation to the CAO (usually the Warden). 20 Ill. Admin. Code §504.830(e). The CAO then advises the inmate of the final decision on the grievance. *Id.*

If not satisfied with the decision of the CAO, an inmate may appeal the decision of the CAO to the ARB. 20 Ill. Admin. Code § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The appeal must be received by the ARB within 30 days after the date of the CAO's decision. 20 Ill. Admin. Code §504.850(a). The inmate must attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination. 20 Ill. Admin. Code § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 Ill. Admin. Code § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.* If however, it is determined not to be an emergency, then the inmate must submit the grievance through the standard grievance process in order to exhaust his administrative remedies. 20 Ill. Admin. Code § 504.840(c); *see also Smith v. Asselmeier*, 762 F.App'x 342 (7th Cir. 2019) (unpublished opinion) (finding resubmission of a grievance deemed not an emergency through the normal grievance process is an available remedy that must be exhausted before filing suit).

**Discussion**

Defendant Cross argues that Plaintiff failed to exhaust his administrative remedies because his January 3, 2017, and January 4, 2017 grievances failed to identify Cross or to allege that any prison employee failed to protect Plaintiff from Keuger. The Court agrees. *See* 20 ILL. ADMIN. CODE § 504.810(c) (stating that the grievance form must include "the name of each person who is the subject of or who is otherwise involved in the complaint."); *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). The purpose of a grievance is to provide prison officials a fair opportunity to address the inmate's complaint. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). The January grievances failed to provide such notice, as neither involved complaints about failing to prevent Kreuger's attack on Plaintiff.

Plaintiff argues that his note to Defendant Cross, his letter to Warden Lashbrook, and his December 9, 2017 grievance satisfy administrative exhaustion requirements. Unfortunately for Plaintiff, each of these purported grievances is also deficient. Plaintiff's note to Defendant Cross does not comply with the grievance process as it is not on a grievance form, was not sent to Plaintiff's counselor or a Grievance Officer, and was not filed in a designated repository. *See* 20 ILL. ADMIN. CODE § 504.810(a) (stating that "[a]n offender may file a written grievance on a grievance form . . . ." and "[g]rievances shall be addressed to [the inmate's] institutional counselor [or] complaints concerning . . . sexual abuse shall be sent by the offender directly to the Grievance Officer."); § 504.810(c) ("The original grievance from shall be deposited in the living unit mailbox or other designated repository."). Plaintiff's letter to Warden Lashbrook is insufficient for the same reasons.

Plaintiff's December 9, 2017 emergency grievance suffers from a different problem. The emergency grievance mentions Defendant Cross and was filed in accordance with the Illinois Administrative Code. However, the CAO determined that the grievance was not an emergency and informed Plaintiff to "submit [the] grievance in the normal manner." (Doc. 6, p. 35). Plaintiff offers no evidence, nor does he argue, that he resubmitted this grievance in the normal manner as required by Illinois regulations. *See* 20 ILL. ADMIN. CODE § 504.840(c) ("If the Chief Administrative Officer determines that the grievance should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process."). Instead, citing *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005), in which the Seventh Circuit concluded that Illinois regulations did not require inmates to file a new grievance after learning that their current grievance would not be considered on an emergency basis, he argues that he was not required to resubmit the grievance. However, *Thornton* was decided before Illinois amended its regulations (effective April 1, 2017) to require the resubmission of grievances determined not to be emergencies through the standard grievance process. *See* 20 Ill. Admin. Code § 504.840(c). Because Plaintiff filed his grievance eight months after the amendment became effective, he was required to resubmit the grievance under the normal procedures, which he failed to do. And, as such, he failed to exhaust his administrative remedies for that grievance, and Defendant Cross is entitled to summary judgment on the issue of failure to exhaust administrative remedies.

## Disposition

For the forgoing reasons, Defendant's Motion for Summary Judgment (Doc. 35) is **GRANTED.** Plaintiff Michael Fencel's claim against Defendant Ryan Cross is **DISMISSED**

**without prejudice** for failure to exhaust administrative remedies. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

    **IT IS SO ORDERED.**

    **DATED:  July 7, 2020**

                                    *s/ Staci M. Yandle*
                                    **STACI M. YANDLE**
                                    **United States District Judge**